**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MATTHEW LEMAITRE<br>213 Melbourne Lane<br>Erial, NJ 08081 | : | |
| | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: |
| v. | : | |
| | : | |
| COPART, INC. | : | |
| 14185 Dallas  Parkway, Suite 300 | : | |
| Dallas, TX 75254 | : | |
| | : | |
| and | : | **JURY TRIAL DEMANDED** |
| | : | |
| COPART CATASROPHE RESPONSE | : | |
| FLEET, LLC | : | |
| 14185 Dallas  Parkway, Suite 300 | : | |
| Dallas, TX 75254 | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

Mr. Matthew LeMaitre (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Copart, Inc. ("Defendant Copart") and Copart Catastrophe Response Fleet, LLC ("Defendant CCRF") (hereinafter collectively "Defendants") for violations of the Surface Transportation Assistant Act ("STAA" - 49 U.S.C. § 31105); the New Jersey Conscientious Employee Protection Act ("CEPA" – N.J.S.A. 34:19-1 et. seq.); and New Jersey common law.

2. Plaintiff asserts, *inter alia*, that Defendants were not following Department of Transportation ("DOT") or Federal Motor Carrier Safety Administration ("FMCSA") regulations and after he complained of and objected to same, Defendants unlawfully terminated his employment in retaliation.

1

3.    Specifically, Plaintiff refused to illegally operate equipment in excess of FMCSA/DOT hours of service limits and objected to Defendants illegally modifying his log books.

4.    Shortly after he objected to/complained about said issues and refused to operate vehicles in an unsafe or illegal manner, Defendants terminated Plaintiff under demonstrably pretextual circumstances as discussed herein.

## JURISDICTION AND VENUE

5.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes. Any state law claims asserted herein arise out of the same common nucleus of operative fact(s), rendering supplemental jurisdiction of state claims appropriate.

6.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000. Plaintiff is a citizen of New Jersey and Defendant is a citizen of Delaware and Texas.

7.    This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8.    Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of the District of New Jersey for this action.

9.      On or about November 12, 2024, Plaintiff timely filed a complaint of discrimination and retaliation with Department of Labor ("DOL") vis-a-vis the Occupational Safety and Health Administration ("OSHA") (the "OSHA Complaint") and brings this action upon the Secretary of Labor's failure to issue a final order within 210 days after receipt of the OSHA Complaint.

## PARTIES

10.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.      Plaintiff is an adult individual, with an address as set forth in the caption.

12.      Defendant Copart is a Delaware business corporation with a principal place of business located  at an address as set forth in the caption.

13.      Defendants CCRF is a Delaware Limited Liability Corporation and a wholly owned subsidiary of Defendant Copart.

14.      Defendant Copart is a multi-national provider of online vehicle auction and remarketing services to automotive resellers such as insurance, rental car, fleet and finance companies in 11 countries.

15.      Defendant CCRF recovers storm damaged vehicles on behalf of insurance companies to transport them to Copart facilities where they are properly prepared and sold in our online auctions.

16.      Defendants operate from the same headquarters (and location), utilize over-lapping resources, share employees, and function as the same enterprise. They are properly considered single, joint, and/or integrated employers for the purposes of this lawsuit.

17.      Defendants jointly operate a terminal located at 200 Grove Street, Glassboro, NJ 08028 at which they employed Plaintiff ("Glassboro Copart").

18.      At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

19.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

20.    On or about May 20, 2022, Defendants hired Plaintiff as a Class A Commercial/CCRF Driver and employed him in that capacity until unlawfully terminating him on or about July 24, 2024, as discussed herein.

21.    Plaintiff was based out of Copart Glassboro and would be dispatched to pick up totaled vehicles at various locations before bringing the vehicles back to Copart Glassboro.

22.    In this capacity, Plaintiff was responsible for the safe operation of flatbed transportation trucks, well in excess of 10,001 pounds, which he operated to pick up and deliver vehicles for Defendants.

23.    During his employment, Plaintiff was primarily supervised by Defendants' Yard Manager Mark Rogers ("Rogers"), Defendants' Fleet Operations Manager/CCRF Supervisor Michael London ("London"), and Defendants' Copart Glassboro General Manager Michelle Marynowicz ("Marynowicz").

24.    Marynowicz was generally unfamiliar with DOT/FMSCA regulations and frequently instructed Plaintiff (and other drivers) to ignore or disregard safety regulations in an effort to increase Defendants' profitability.

25.    Further, Defendants, including London, engaged in willful and routine manipulation of drivers' logs, often "fixing" the hours of service to falsely show a driver had been under the hours of service, when in fact they had gone over.

26.    This is **a very serious federal regulatory violation**. 49 C.F.R. § 395.30 states:

> **(a)** *Accurate record keeping.* A <u>driver</u> and the <u>motor carrier</u> must ensure that the <u>driver</u>'s <u>ELD records</u> are accurate.
>
> &#42; &#42; &#42;
>
> **(d)** *Motor carrier-proposed edits.*
>
> **(1)** On review of a driver's submitted records, the motor carrier may request edits to a driver's records of duty status to ensure accuracy. **A driver must confirm or reject any proposed change**, implement the appropriate edits

4

on the driver's record of duty status, **and recertify and resubmit the records in order for any motor carrier-proposed changes to take effect**.

**(2) A motor carrier may not request edits to the driver's electronic records before the records have been submitted by the driver**.

**(3)** Edits requested by any system or by any person other than the driver **must require the driver's electronic confirmation or rejection**.

**(e)** *Coercion prohibited.* A motor carrier may not coerce a driver to make a false certification of the driver's data entries or record of duty status.

*See* 49 C.F.R. § 395.30 (Emphasis added).

27.     In the months leading up to his abrupt termination from Defendants (discussed further *infra*), Plaintiff objected to these illegal directives from management, specifically objected to the manipulation of his driver logs, raised complaints that Defendants' GeoTab system (used to monitor and track hours of service) was not tracking properly and was placing Plaintiff (and other drivers) in jeopardy of exceeding hours of service limits, and refused to drive outside of his hours of service limits.

28.     Defendants' managers generally rebuffed Plaintiff's complaints complaints and insisted Plaintiff and other drivers disregard hours of service regulations to pick up no less than ten (10) cars per day.

29.     On or about July 19, 2024, Marynowicz dispatched Plaintiff from the Glassboro Copart around 4:00pm to pick up vehicles in Point Pleasant, NJ.

30.     Plaintiff had already been in service since starting his day at 6:00 a.m., and thus the 3-4 hour round trip (during peak Friday summer shore traffic) from Glassboro to Point Pleasant would have put him over the maximum number of service hours under FMSCA and DOT regulations. *See e.g.*, title 49 CFR part 395.

31.     Plaintiff had previously objected to this illegal directive as discussed herein, again told Marynowicz that the trip would put him over the hours-of-service limit and that he therefore could not accept the dispatch.

32.     Marynowicz was demonstrably upset and annoyed with Plaintiff, demanded to know why he could not accept the dispatch, and again brushed off his concerns about hours-of-service regulations.

33.     Mere days later, on or about July 24, 2024, Marynowicz called Plaintiff into her office to suspended him before subsequently terminating Plaintiff for alleged "misconduct."

34.     Marynowicz claimed that Plaintiff and Charles Tiernan, another CCRF driver, had engaged in unprofessional behavior by playing a practical joke on each other. However, only Plaintiff was terminated for this alleged behavior.

35.     Further demonstrating the blatantly pretextual and absurd reasoning, Defendants later shifted their proffered explanation, informing the New Jersey Department of Labor that Plaintiff had been terminated for "production issues" in unemployment proceedings.

36.     Plaintiff merely provides examples *supra* of factual and legal violations of regulations and laws, as much of what Plaintiff was required and directed to do during his employment was illegal and/or against state and federal regulations.  *See, e.g.*, *Durst v. FedEx Exp.*, No. 03–CV–5186 (JBS), 2005 WL 3534179, at *5 (D.N.J. 2005) (a plaintiff is not required to cite to any laws for his or her reasonable belief of a legal violation during litigation; but rather, to set forth a communicated belief of something that was believed to be unlawful).

## COUNT I
### Violations of the New Jersey Conscientious Employee Protection Act ("CEPA")
### ([1] Wrongful Termination & [2] Retaliation)

37.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.     Plaintiff was terminated for pretextual reasons shortly after engaging in protected activity by making good faith complaints and/or for objecting to Defendants' actions which he reasonably believed to be illegal such as:

    a.  Defendants' illegal modification of drivers' hours of service logs; and

b.  Defendants directing Plaintiff to operate outside of hours of service limits in violation of DOT/FMCSA regulations and state laws.

39.  These actions as aforesaid constitute violations of CEPA.

## COUNT II
### *Pierce* Common-Law Wrongful Termination
### (Retaliation - Wrongful Termination)

40.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41.  New Jersey maintains common-law protections for employees terminated for opposing unlawful acts, refusing to commit crimes, and who are terminated for violations of public policy.

42.  Plaintiff complained of/objected to Defendants' clear violations of public policy (set forth *supra*).

43.  Plaintiff was terminated by Defendants for complaining of/objecting to Defendants' requiring him to engage in such clear mandates of public policy as a condition of his continued employment.

44.  Such actions are a violation of Common Law in the state of New Jersey.  *See Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J 58 (1980).

## COUNT III
### Surface Transportation Assistant Act ("STAA" - 49 U.S.C. § 31105)
### (Retaliatory Termination)

45.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.  The STAA provides in relevant part that:

A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because - the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation . . ., the person perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding related to a violation of a commercial motor vehicle safety or security regulation . . ., the employee

7

refuses to operate a vehicle because (i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security; or (ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition;. . .the employee accurately reports hours on duty pursuant to chapter 315; . . .the employee cooperates, or the person perceives that the employee is about to cooperate, with a safety or security investigation by the Secretary of Transportation, the Secretary of Homeland Security, or the National Transportation Safety Board.

49 U.S. Code § 31105.

47.    Plaintiff was terminated by Defendants for filing a complaint, or being perceived as about to file a complaint relating to commercial vehicle safety and security regulations, and/or refusing to operate a vehicle in violation of regulations and/or because of a reasonable apprehension of serious injury.

48.    Defendants' action of discharging Plaintiff from his job therefore constitutes unlawful retaliation in violation of the STAA.

49.    Defendants' actions and conduct was outrageous and done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable relief, an award of compensatory damages, liquidated and/or punitive damages, expenses, attorneys fees, and all other damages provided for by law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

8

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: July 22, 2025

9